

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 21, 2023

**BY ECF AND EMAIL**

Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square, Room 1305
New York, New York 10007

> Re:   *United States v. Daysean Bannister*, No. 15 Cr. 537 (PAE)

Dear Judge Engelmayer:

The Government writes to respectfully renew its application that certain portions of the transcript from the March 10, 2023 violation of supervised released hearing for defendant Daysean Bannister (the "Hearing") be sealed. Specifically, the Government requests that references to Victim-1 and Victim-1's mother ("Mother") be sealed and replaced by their initials.

## I.    Background

At the outset of the Hearing, the Government requested—in the interests of public safety and the safety and privacy of Victim-1 and her family—that the Court seal the portions of the transcript that mention Victim-1 by name. (Hearing Tr. at 16-17.) The Government explained that its safety concerns stemmed not only from risks posed to Victim-1 by the defendant himself, but also from risks posed to Victim-1 by gang members with whom the defendant affiliates, citing Victim-1's fears that these individuals would come looking for her at the defendant's direction. (*Id*. at 17.) Defense counsel objected to sealing portions of the transcript as unnecessary because the defendant "knows who we are talking about." (*Id*. at 16-17.)

During the hearing, witnesses testified that Victim-1 and her Mother made significant allegations about the defendant's violent and abusive conduct towards Victim-1. In addition, there was testimony about risks to Victim-1 and her family's safety. For instance:

- Officer Angela Cosenza testified that Victim-1 told her that "she had concerns of her safety for her and her children related to this abuse," and that Victim-1 would not feel safe testifying at the Hearing. (*Id.* at 40.)

Honorable Paul A. Engelmayer
March 21, 2023
Page 2 of 6

- Officer Cosenza further testified that when she called Victim-1 in February 2023 to ask if Victim-1 would be willing to speak with the Government about the Hearing, Victim-1 told her that "she did not want to be a part of it" but "she would like to do what she could to see Mr. Bannister in prison." (*Id.* at 44.) Victim-1 indicated that she felt this way because of safety reasons. (*Id.*)

- Officer Cosenza testified that the Mother reported to her that the defendant "threatened to have the family jumped," meaning, "[a]ttacked by a group of individuals, either in the street or in a residence." (*Id.* at 62.)

- Child Protective Specialist Janice Cousar of the New York City Administration for Children's Services ("ACS") testified that Victim-1 told her the defendant "was in a gang and she was very fearful of it." (*Id.* at 83.) Ms. Cousar further testified that Victim-1 was scared of the defendant because "he had a gun." (*Id.* at 87.)

Near the conclusion of the Hearing, Your Honor directed the court reporter to seal the names of Victim-1's children in the Hearing transcript, and instead refer to them "by the first initial of their name." (*Id.* at 126.) The names of Victim-1 and her Mother were not sealed, in part because Victim-1 "is an adult." (*Id.*)

## II.    Applicable Law

The Crime Victims' Rights Act, 18 U.S.C. § 3771, requires district courts to implement procedures to ensure that crime victims are accorded, among other rights, "[t]he right to be reasonably protected from the accused," and "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." *Id.* §§ (a)(1), (a)(8). Strong public interests support limiting public disclosure of victim identities and other sensitive information. Notably, courts have recognized that "fictitious names are allowed when necessary to protect the privacy of . . . rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) (cited by *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (noting that the Seventh Circuit Court of Appeals generally "disfavors the use of fictitious names" but recognizes their import in those circumstances)).

Courts have not interpreted the privacy and safety rights of victims under the Crime Victims' Rights Act to be limited to victims who are minors. For instance, courts in this Circuit and this District have permitted victims of sexual abuse to testify under pseudonyms "whether or not the alleged victims are minors or adults or adults testifying about abuse that allegedly occurred when they were minors." *United States v. Maxwell*, 20 Cr. 330 (AJN) (S.D.N.Y. Nov. 1, 2021) (Conference Tr., Dkt. 465 at 7); *see also United States v. Raniere*, No. 20 Cr. 3520, 2022 WL 17544087, at *6-*7 (2d Cir. Dec. 9, 2022) (summary order) (affirming the district court's order permitting testifying victims—at least one of whom was an adult testifying about sex abuse sustained as a minor—to testify by a nickname, first name, or pseudonym only, where the court "reasoned that requiring victims to provide their names in public 'could chill their willingness to testify, for fear of having their personal histories publicized'" and where defendant "already knew the identity of the individuals"); *United States v. Hadden*, S2 20 Cr. 468 (RMB) (S.D.N.Y. Dec.

Honorable Paul A. Engelmayer
March 21, 2023
Page 3 of 6

27, 2022) (Dkt. 211 at 5) and *id.* (Dec. 29, 2022 Conference Tr. at 41) (with the consent of the defense, permitting adult victims of sex crimes to testify under pseudonyms, where the victims' true names were known to the defense and jury but not to the public); *Maxwell*, 20 Cr. 330 (Dkt. 465 at 6-8) (permitting victims to testify under pseudonyms—a "quite common" proposal—because of the court's statutory duty to protect an alleged crime victim's right to be treated with fairness and with respect for the victim's "dignity and privacy," because of the "sensitive and inflammatory nature of the conduct alleged," and because if victims of abuse were subject to publicity, harassment, and embarrassment, "other alleged victims of sex crimes may be deterred from coming forward" to report abuse); Aug. 3, 2021 Tr. at 53:13-55:2, *United States v. Kelly*, No. 19 Cr. 286 (E.D.N.Y.) (permitting certain victims to testify using pseudonyms or their first names and prevent public disclosure of their addresses, names of family members, or exact places of employment).

While the Confrontation Clause of the Sixth Amendment guarantees defendants the right to confront Government witnesses testifying against them, it is not absolute. *See California v. Green*, 399 U.S. 149, 173-74 (1970). A defendant's rights under the Confrontation Clause must yield to accommodate other legitimate interests. *See, e.g.*, *Chambers v. Mississippi*, 410 U.S. 284, 295 (1970); *United States v. Figueroa*, 548 F.3d 222, 227 (2d Cir. 2008). For instance, trial courts have "wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, or the witness's safety." *United States v. Al Farekh*, 810 F. App'x 21, 25 (2d Cir. 2020) (summary order) (alterations omitted) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)); *see* Fed. R. Evid. 611(b) (imposing limits on the scope of cross-examination). This is especially so in the context of a supervised release revocation hearing, where the Confrontation Clause's structures are somewhat relaxed. *See Black v. Romano*, 471 U.S. 606, 613 (1985) ("[O]ur precedents have sought to preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial."); *see also United States v. Diaz*, 986 F.3d 202, 209 (2d Cir. 2021) ("Neither the Federal Rules of Evidence nor the Sixth Amendment's Confrontation Clause apply with full force in a revocation proceeding.").

With regards to the disclosure of witness identifying information, the Second Circuit has identified two primary interests of defendants under the Confrontation Clause: "(1) obtaining information needed for in-court and out-of-court investigation of the witness; and (2) enabling defense counsel to elicit information that might be relevant to the jury's deliberations as to the credibility or knowledgeability of the witness." *United States v. Marcus*, No. 05 Cr. 457 (ARR), 2007 WL 330388, at *1 (E.D.N.Y. Jan. 31, 2007) (citing *United States v. Marti*, 421 F.2d 1263, 1266 (2d Cir. 1970)), *aff'd*, 628 F.3d 36, 45 n.12 (2d Cir. 2010) (finding the defendant's argument that "the district court's decision permitting two of the Government's witnesses to testify using only their first names and not to disclose their addresses or employment violated" the defendant's due process rights to be "without merit" in a sex trafficking and forced labor case).

If the Government provides a reason to "limit disclosure of identifying information in open court," the defendant must "demonstrate a 'particularized need' for disclosure . . . which the court weighs against the risks to the witness." *Id.* (citing *Marti*, 421 F.2d at 1266; *United States v. Bennett*, 409 F.2d 888, 901 (2d Cir. 1969)); *see United States v. Urena*, 8 F. Supp. 3d 568, 572-73

Honorable Paul A. Engelmayer
March 21, 2023
Page 4 of 6

(S.D.N.Y. 2014) (permitting an undercover law enforcement officer to testify under a pseudonym, after balancing the relevant interests); *see also United States v. Cavallaro*, 553 F.2d 300, 304 (2d Cir. 1977) ("[W]here the government voices a legitimate concern for a witness' safety, the trial court must balance the potential danger to the witness against the need of the defense for the information.").

## III.   Discussion

Pursuant to the Crime Victims' Rights Act, the portions of the Hearing transcript that mention Victim-1's name and her Mother's name should be sealed and replaced with their initials in the interest of their safety and privacy. *See* 18 U.S.C. §§ 3771(a)(1), (a)(8). As the testimony at the Hearing demonstrated, the safety concerns and potential danger towards Victim-1 and the Mother are legitimate. These issues stem not just from the defendant, but from other dangerous individuals who may act at the defendant's direction. Indeed, the evidence at the Hearing included testimony that the defendant is in a gang and has threatened to have Victim-1 and her family "jumped" by other individuals. (Hearing Tr. at 62, 83.)

The Hearing transcript contains Victim-1's and the Mother's detailed and serious allegations about the defendant engaging in violent and abusive conduct over a prolonged period of time, including allegations that he possessed a firearm. As a result of the Hearing, if the Court determines that the defendant violated certain terms of his supervised release, the defendant may face incarceration. The defendant may well be angry with Victim-1 or her Mother for detailing the abuse Victim-1 experienced at the defendant's hands to Probation and ACS. Indeed, defense counsel stated that the defendant "feels very much like he's being bullied here, that he's the victim." (Hearing Tr. at 20.) In light of this, coupled with the defendant's history of domestic violence and gang activity, the Government is concerned that the public availability of Victim-1's and the Mother's names will be used to harm them.

While it is true that the defendant already knows the identities of Victim-1 and her Mother, there is no compelling need that the defendant can identify to have the names of Victim-1 and the Mother disclosed in publicly docketed filings. It is one thing for the defendant to *tell* people that Victim-1 and her Mother made these allegations against him. It is another thing entirely for the defendant to be able to *show* people the Hearing transcript—an official Court document which contains both the allegations and the first and last names of those who levied them.

Furthermore, the testimony about the abuse that Victim-1 endured at the defendant's hands is highly personal and private. Victim-1 spoke with Officer Cosenza and Ms. Cousar about being hit, slapped, pushed, and shoved, including while she was pregnant, and including in the presence of her young children. Victim-1 did not testify at the Hearing, and she did not consent to this information about her being shared publicly. As a victim of a crime, Victim-1 has a statutory right to be treated fairly and respectfully with respect to her dignity and privacy. 18 U.S.C. § 3771(a)(8). And as discussed above, the Crime Victims' Rights Act protects victims of all ages—including adults. That Victim-1 and her Mother are not minors does not diminish their right to have their identities kept private. Moreover, the Government's request is a corollary of the protections

Honorable Paul A. Engelmayer
March 21, 2023
Page 5 of 6

provided to Victim-1's children.  Including the names of Victim-1 and the Mother in a publicly available transcript means that Victim-1's young children are more easily identifiable.

Balancing the Government's legitimate safety and privacy concerns of including the full names of Victim-1 and Victim-1's mother in the Hearing transcript, with the defendant's particularized need for this information, makes clear that the Government's requested relief is narrowly tailored and appropriate here.  *See, e.g.*, *Marcus*, 2007 WL 330388, at *1; *Cavallaro*, 553 F.2d at 304.  Simply stated, there is no conceivable reason that the defendant needs the names of Victim-1 and the Mother to be included in a publicly available transcript.  Sealing the names of Victim-1 and the Mother does not infringe on any Confrontation Clause rights of the defendant. He already knows who Victim-1 and her Mother are, he had knowledge of them when he was "obtaining information needed for in-court and out-of-court investigation of the witness[es]," and he had knowledge of them when "enabling defense counsel to elicit information that might be relevant to . . . the credibility or knowledgeability of the witness."  *See Marcus*, 2007 WL 330388, at *1. There will be no effect on the defendant or his constitutional rights if the Court seals Victim-1's and her Mother's name from the Hearing transcript.[1]  The Government's proposed relief is a modest and necessary limit to protect the privacy and safety of Victim-1 and her family.

## IV.    Conclusion

In sum, because the risks to the safety and privacy of Victim-1 and her Mother—and consequently the children of Victim-1—vastly outweigh any purported need of the defendant to have their first and last names included in a publicly available document, this Court should seal

---

[1] Likewise, any restriction on the public's right of access to the Hearing transcript containing Victim-1's and her Mother's name is appropriate under these circumstances.  Although "the public has an 'especially strong' right of access to evidence introduced in trials," *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995), it "is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). For example, "subject matter [that] is traditionally considered private rather than public" will weigh "heavily against access."  *Amodeo*, 71 F.3d at 1050; *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (noting that one of the "countervailing factors" weighing against the "presumption of access" is "the privacy interests of those resisting disclosure") (citation and internal quotation marks omitted).  This includes certain "financial records . . . , family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters . . . ." *Amodeo*, 71 F.3d at 1051. "[T]he 'venerable' privacy-interest exception to the presumption of access exists to avert 'cater[ing] 'to a morbid craving for that which is sensational and impure.'" *United States v. Cohen*, 366 F. Supp. 3d 612, 626-627 (S.D.N.Y. 2019) (quoting *Amodeo*, 71 F.3d at 1051).  The Government's requested relief balances the public's presumption of access with narrowly tailored protections of the privacy interests of Victim-1 and the Mother.

Honorable Paul A. Engelmayer
March 21, 2023
Page 6 of 6

the names of Victim-1 and her Mother in the Hearing transcript and replace their names with
their initials.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: *Chelsea Scism*

Chelsea L. Scism
Lara Pomerantz
Assistant United States Attorneys
(212) 637-2105 / -2343

Cc:    Susan G. Kellman, Counsel to the Defendant (by ECF)

The Court **GRANTS** this application, without prejudice to the defendant's right later to seek, on a
proper showing, the unsealing of any redacted names in the transcript. The Clerk of Court is requested
to terminate the motion at Dkt. No. 1800.

3/22/2023

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge